Please the court counsel my name is Tom Hoyt, appointed counsel for Michael Steel. I was appointed by this court on appeal. Mr. Steel was not represented by counsel in the lower court. This is an appeal from the dismissal of the petition for writ of habeas corpus under 28 UIC section 2254 by a state prisoner. The dismissal was based upon the failure to file within the one year statute of limitations in the anti-terrorism and effective death penalty act. Mr. Steel sought a equitable tolling based on mental impairment. At the time the district court entered, the magistrate did a report and recommendation and the district court entered its order, both Holland v. Florida and Bills v. Clark were not in existence yet. They have changed the landscape considerably on equitable tolling based on mental impairment. The Holland case in the Supreme Court and the Bills case last year in this Court set forth the new standard for treating issues of equitable tolling based upon mental impairment. Mr. Steel made his allegations of mental impairment based upon mental retardation and lack of mental competence. He alleged both of those in his verified petition in the district court. The mental retardation had come up based upon a literacy program that the Arizona State Prison had directed that he become involved in. He was exempted from that program based upon his mental impairment. He provided to the prison authorities and later to the – these records were provided to the district court indicating that he had an IQ of something between 70 and 75. That was the mental impairment under the Bills case, which of course the district court did not have before it at the time it made its decision. We are asking for remand so that the court can determine whether mental impairment justifies equitable tolling in this case under the Bills standards. Counsel, how old is Mr. Steel? He was 9 years old in 1963, so I think he's in his late 40s, 50s, something around there. Okay. He was 9 in 63, so born in 54, would be 57 years old now. Is he a high school graduate? Equivalency degree? I don't recall, Your Honor. He went to high school. One of the records that was submitted did come from the schools. Right. That was the 1970 report. That's correct. How about – is there anything in the record on his employment history? There's nothing in the record on his employment history. The question that I have is that he's been processed before. He gets processed here through the state system, and nobody, not his counsel, not his mother, apparently nobody who's ever dealt with him ever considered him mentally retarded. We have some records going back to, what, 1968, 1966, a 1970 report, and he comes up with this and now says, look, I've got new evidence that I'm mentally retarded, and I didn't know it. And I was mentally retarded in 1970, and therefore I must still be mentally retarded, and nobody ever thought to check it. Well, that's correct, Your Honor, but what Your Honor is setting forth is things that would be The question is why this never came up before as to the reasons why Mr. Steele was unaware of this particular circumstance and why counsel was never made aware – counsel in the State court was never made aware of it. The question is not whether they were made aware of it. It was nice to use a passive voice, but why they couldn't figure it out for themselves by talking to the guy. Well, that's not always apparent, Your Honor. I've been representing criminal defendants for many years, and it's not always apparent that someone is mentally retarded or borderline mentally retarded. Latent problems like dyslexia or something like that, some kind of a disability that might impact your ability to understand or appreciate certain things, would be one thing. But, you know, claiming that you have a defense to a time to file a fee because you didn't understand, and yet you've been processed before through the criminal system. You've been – you may have had some kind of an employment history for years and years and years, and he comes back now and says, gosh, you know, nobody told me I was mentally retarded. Now I know it, and now I need special treatment. And how that came up was when he was processed for the mandatory literacy program in the state prison. He does indicate that there was some sort of testing, and the record from the state prison, the attorney general's office has taken the position that it doesn't indicate testing, but it does say the above-named inmate be evaluated for a learning disability exemption. So he was evaluated in some way, and an exemption was made for the mandatory literacy program because of his mental deficiencies. Those are the kinds of things that would be – would come up in an evidentiary hearing. I submit he's made a sufficient showing in his verified petition and in the records that were submitted of a non-frivolous showing that he had a mental impairment. He's under Laws v. Lamarck. He's provided documentation of that based upon the school records that were submitted and the record from the state prison that I just read. I realize that you're at a disadvantage because you came in late to this. You were appointed by us, and then the record's pretty well fixed. But looking back, the concern I had in looking at all the documents – I realize he was pro-safe for a lot of it – is that we have a bare allegation of mental incompetence and perhaps other mental difficulties, but there doesn't seem to be a nexus, a causation element that's alleged between that and the failure to – that would prevent him from filing. Once again, Your Honor, that's – he never had an evidentiary hearing on this matter in the district court. That's – he never had counsel appointed for him. If you look at the Bills case, counsel was appointed for that petitioner. Looks like an examination was done. Borderline mental retardation was one of the issues in that case. Looks like an examination by a psychologist or psychiatrist was done of that petitioner, and then a full hearing at which testimony was taken. That never happened in this case. Mr. Steele never had counsel, never had any evidentiary hearing, and it's apparent from the record that other inmates were assisting him in preparing his petitions after he found out about the retardation. E.R. 47, he talks about other inmates assisting him getting into court and assisting him in filing. Under – under Bills, all he – the test is the petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing. His retardation that he presented evidence on would be sufficient to at least go forward for further factual development on that particular issue, that he was unable to prepare a petition and effectuate its filing. It's evident from the record that he couldn't do it because other inmates were helping him. We're down to about two minutes. Do you want to reserve some time for us? I'll reserve some time. Thank you, Your Honor. Excuse me. May it please the Court, Craig Soland, Assistant Attorney General, for the Respondents. I'd like to just start with the jurisdictional issue that I raised in my letter. I hope the Court got it. Go ahead. Okay. Our point is pretty simple, and it's just simply that even when the Court is reviewing a dismissal on procedural grounds, as it is now, there has to be, for jurisdictional purposes, a determination that there was a substantial showing of a violation of constitutional right, and there has to be in the Certificate of Appealability an identification of that issue. And the purpose of this is to narrow the Court's jurisdiction to even where procedural issues are being considered to those cases which have substance underneath them in a constitutional sense. And that hasn't been done in this case, at least with respect to the requirement of identifying which constitutional issue there's substantial evidence that there was a problem with. And we think that the Court should and must look at the underlying petition and make, in good faith, the determination that there was a substantial violation of a constitutional right before it proceeds here, and that when the Court looks at the issues that were asserted, the three issues that were asserted below, it will find that there wasn't. And I don't want to belabor the point, but it's jurisdictional, and we thought it was necessary to bring it to the Court's attention. Turning to the test, which I think is one of the big parts of the issue before the evidence you're hearing is required, we're pretty far apart. We think that when you look at laws and when you look at Roy, that there has to be the equivalent of a prima facie case, that there has to be good faith allegations, and by that I mean verified assertion, allegations and pleadings, affidavits, declarations, other kinds of evidence. But good faith allegations, if believed, reasonably indicate that the petitioner will be able to make a case for each of the three elements of equitable tolling. The difficulty is, and I take your point, is in a case like this, it's awfully hard when someone is alleging pro se that they have a mental impairment that prevents them from filing, from holding them accountable for not filing, if you take my drift. And the difficulty for us, I think, is then to say, well, when is an evidentiary hearing warranted? When is there enough in the record that would warrant an evidentiary hearing in such a case? Well, first there has to be a good faith allegation of an extraordinary circumstance, and this Court has never held, and I don't think it should, that a mere showing of borderline intellectual ability. We're not talking about mental retardation here. Those words are sometimes used, but that's not what those tests show. They show borderline intellectual functioning, and that mere showing. What does that mean? Well, it means it's in the IQ scale. It doesn't go down to the level of mild mental retardation. It's not in the record, but my understanding is you have, you know, profound, severe, and I'm a layman, but that you're talking about a borderline intellectual functioning. You're not talking about mild retardation. You're not talking about mental retardation. But it's a scale of IQ and perhaps other determinations as well. But that's what those tests show. None of them says he's mentally retarded. It says he has borderline intellectual functioning. But this Court has never held that borderline intellectual functioning is an extraordinary circumstance, and it shouldn't hold that. When you look at the Bills case, it talks about severe mental impairment, that the person has to show that the mental impairment was so severe that they were not capable of personally understanding the need to timely file or personally preparing their petition, and that impairment made it impossible to file on time despite diligence. And that hasn't been shown in this case. All we have is sort of a per se, a reciprocal, I sort of think of it as kind of showing where he says, I was tested in my childhood, and I came out borderline in my intellectual functioning, and therefore please assume that there is a connection between my IQ and my failure to file and the fact that I filed 271 days late. And please assume that I was diligent. And our position is that you have to have a good faith allegation not only of the exceptional circumstance, which hasn't been shown here with the borderline intellectual functioning, but that there was a connection that that circumstance cost the untimely filing despite diligence. If all you have is an allegation of limited mental functioning, then everybody who falls beneath some predetermined benchmark has a ticket to an evidentiary hearing. Well, I think he's arguing just a bit more from that. You heard his argument. Part of his contention is that once he became aware of the extent of his impairment, then he asked for assistance, and that's when, at least to draw the inference, that he can't file alone and he needs assistance from that. Well, there was no allegation that his limited intellectual functioning caused it and no explanation of how it did. When I look at the facts, it's, I mean, one could read the facts as saying that he didn't come up with this theory until he had three months left on the statute of limitations. And that is a different kind of allegation than my borderline intellectual ability made it impossible for me to file on time despite diligence. He just simply didn't come up with a theory. We're talking not about evidence that was withheld from him or that he didn't have in his control. These are his school records. I mean, he was a man, and these records, I think the newest one was 36 years old. This is all stuff he could have gotten, you know, during his trial at sentencing, but he didn't. And just because he didn't think, come up with, or his representatives didn't come up with the theory until there was three months left, and by that time the state PCRs wouldn't hold the statute of limitations, isn't an extraordinary circumstance. There wasn't a placeholder petition filed under PACE. There wasn't anything of that sort. With reference to Bill's counsel says that all he has to make is a non-frivolous showing of a severe mental impairment. Bill's was not setting out to define the showing that has to be made for evidentiary hearings. It was dicta in that case. But the thing I'd like the court to focus on is severe mental impairment in the clause that counsel quotes from Bill's is a defined term. And severe mental impairment doesn't match up against borderline intellectual functioning. Again, he has to show or at least give the court good faith allegations to believe that the impairment was so severe that he was personally not able to understand the need to timely file or prepare. And he had, when you look at the facts, he had either by himself or through other prisoners, I note that he has at least signed these petitions in cursive handwriting in his own name. But you don't have a situation where you have the kind of severe mental impairment that is talked about in Bill's. But even when you do, you have to have a causal nexus. You have to have a showing that the impairment made it impossible to file on time, notwithstanding a reasonable diligence in our position is that that hasn't been shown here. And just to say that I should get a hearing because I have borderline intellectual functioning sets the bar too low, as we say in our briefs. The last point I'd like to make, unless the court has any questions, is counsel talks about the fact that Laws was sent back for further determination. Laws, I mean, the test in Laws is essentially the test that we're advocating here. But the situation in Laws was very different than the situation here. You had the fact in Laws that competency was contested at trial. You had psychiatrists and psychologists were at odds on both sides of the fence, but it went ahead anyway. You had the fact that he filed a verified traverse and attached a verified state pleading, which had allegations that he had no kinds of consciousness during those years, that my psychotic, I forget the words that he used, but referring to his condition, prevented my timely filing. You had a much stronger showing than you have in this case, where all you have is a showing that in childhood he had a borderline intellectual functioning and no showing of a causal nexus and no showing of diligence. Thank you, counsel. Thank you. To answer your question, Your Honor, that Michael Steele's date of birth is 102758, which would make him 53 years old. With respect to the jurisdictional point, I don't really understand that point at all, because the State in their brief, in their answering brief, said this Court has appellate jurisdiction. So I don't understand how they're taking a position that the Court does not have jurisdiction now. With respect to the the let me stay with their brief for just a second. With respect to this being an extraordinary circumstance, the State itself in their brief says it is estimated that between 1 and 3 percent of the population has between 70 and has an IQ between 70 and 75. That's a pretty extraordinary situation in and of itself if it's 1 to 3 percent of the population. With respect to the prior cases, one of the situations in Bills, which is identified in the opinion, is that Bills had, quote, borderline to mildly retarded level of intelligence. And remember, in Bills, this guy had filed things on his own. There was evidence he had filed things on his own while a State prisoner and had represented himself pro se during the prisoner in possession of a sharp instrument trial. He had represented himself in a trial. Yet there was sufficient evidence in that case for an evidentiary hearing on whether equitable tolling should be, should be, should exempt him from the 1-year statute limitations. And with respect to diligence oh, with respect to the way this particular thing came up, I would refer the Court to E.R. 46 and 47. There is a discussion by whoever was preparing Mr. Steele's petition, and I think they were discussing the limitations of how this issue came up. It describes that prison official tested the defendant's mental capacity for mandatory education. Prison officials contacted the defendant's mother who was given power of attorney over the defendant's affairs and requested that she obtain medical records for the defendant. They instructed her how and where to obtain these mental health records, and she submitted an affidavit. With these newly discovered mental health records and defendant's new examination by prison officials, fellow prisoners are attempting to help this mentally retarded fellow prisoner get back in court with competent counsel as it is apparent that doctors from as far back as 1968 determined the defendant is mentally retarded and state prison officials in 2006 confirmed the defendant is still mentally retarded. So that describes ER 46 and 47, describe how this issue came up and why it came up at the time it did, and that that was what caused the records of mental retardation to be obtained, and for the defendant to first see those records and take action with the assistance of other inmates based on that. Thank you, counsel. The case just heard will be submitted for decision. Thank you both for your arguments.
judges: Thomas, Gould, Bybee